■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v PETER A. VEREB, Respondent.—Appeal by the People from an order of the Supreme Court, Suffolk County (McInerney, J.),

dated July 13, 1984, which granted that branch of the defendant's omnibus motion which was to suppress certain physical evidence seized by the police, as well as oral statements made by the defendant to law enforcement authorities.

Order reversed, on the law, that branch of the defendant's omnibus motion which was to suppress physical evidence seized by the police, as well as oral statements made by the defendant to law enforcement authorities denied, and matter remitted to the Supreme Court, Suffolk County, for further proceedings.

On March 12, 1984, at approximately 2:45 P.M., two detectives, while on patrol in an unmarked police vehicle, noticed the defendant standing between two cars which were parked in the Cold Spring Harbor Railroad Station, a site which was notorious for criminal activity involving thefts pertaining to automobiles. The defendant appeared to be "looking around" in a somewhat furtive manner.

The officers continued to patrol the station. Shortly thereafter, they again passed by the area where the defendant had been standing and observed that he had bent over the passenger door of a blue Chevrolet. As the police officers were in the process of exiting the parking lot, they observed that the defendant had stood up and appeared to be watching them until they departed the area. The detectives drove a short distance; however, because their suspicions were aroused by their prior observations, they decided to return to the parking lot. Upon their return, they observed that the defendant was still standing at the blue Chevrolet. They watched as he opened the passenger door and inserted his leg into the car. At this juncture, a woman passed by and the defendant immediately looked up and quickly proceeded toward the staircase which led to the second tier of the parking lot. The detectives then inspected the blue vehicle and observed that the door had been left ajar. They proceeded to drive to the upper tier of the lot. Several minutes later, they noticed the defendant drive by in another vehicle. They followed him for several blocks and then turned on their siren and lights to signify that the defendant should pull over. As they were pulling to the curb, the detectives noticed that the defendant had bent over as if he were attempting to place something underneath the front seat of his vehicle. The defendant then pulled to the curb and exited his automobile. One of the officers initiated a conversation with the defendant while the other visually inspected the driver's side of the defendant's vehicle. This officer discovered several lock picks in the defen-

dant's vehicle; one on the front seat, one on the floor of the car, and three under the front seat.

The defendant was subsequently arrested for possession of burglar's tools and was advised of his *Miranda* rights. The defendant acknowledged that he understood his rights and then agreed to waive them. The detectives ultimately removed from the defendant's vehicle a large brown briefcase which had been on the floor of the passenger side of the automobile. Contained in the briefcase were gloves, an ignition jumper, a wrench, several sets of keys, an iron bar, a screwdriver, and various other implements commonly associated with car thefts. The briefcase was placed in the police vehicle and the officers proceeded to transport the defendant to their precinct. While en route, one of the officers inquired as to the defendant's occupation. The defendant responded that he was an auto mechanic. The officer then asked the defendant to identify the person for whom he was stealing cars. The defendant responded, "If I tell you who I was stealing cars for, they'll kill me". The defendant repeated the statement at the precinct and then invoked his right to counsel. At this point, all questioning by the police ceased.

The defendant moved to suppress the physical evidence seized from his vehicle as well as oral statements made to the police. The hearing court issued a decision wherein it found that the police had improperly stopped the vehicle which the defendant had been driving and that the evidence seized as a result of this stop would, therefore, be inadmissible at any trial.

On appeal, the People contend that the police were fully justified in stopping the defendant's vehicle based on a reasonable suspicion that he had engaged in criminal activity. The People further maintain that the subsequent actions of the police were properly related in scope to the initial lawful stop. We agree, and, accordingly, reverse the order of Criminal Term which granted the defendant's motion to suppress.

The officers at bar did not randomly stop the defendant's vehicle based upon "mere whim, caprice, or idle curiosity" *(see, People v Ingle,* 36 NY2d 413, 420). Rather, they were prompted by their earlier personal observations of the defendant in a parking lot which was known to have a high incidence of crimes involving automobiles. The defendant was behaving in an extremely furtive manner and they watched, for a prolonged period of time, as he attempted to enter one of the vehicles parked in the lot. Moreover, when the defendant realized that he was being watched, he hurriedly left the

scene. A short while thereafter, the police observed the defendant leave the parking lot in a different vehicle. After following him for a short distance, the defendant confirmed their suspicions when they noticed that he had bent over as if he were attempting to secrete an object underneath the front seat of his car.

In view of these specific and articulable facts, we find that the police acted properly in stopping the defendant's car and in asking him preliminary questions regarding his prior activities (see, e.g., People v Donello, 103 AD2d 781).

Moreover, the seizure of the physical evidence from the vehicle which the defendant had been driving in no way impinged upon the defendant's constitutional rights, since the defendant had no legitimate expectation of privacy in objects that were plainly visible from the exterior of the automobile (see, New York v Class, 475 US —, 106 S Ct 960, 966; People v Class, 67 NY2d 431).

The present record discloses that despite the defendant's efforts to conceal the objects, at least two of the lock picks in the defendant's vehicle were in plain view and were discovered by the arresting officer when he peered into the window of the automobile. Hence, suppression of this evidence was unwarranted (see, People v Delgado, 118 AD2d 580). Furthermore, upon discovery of this evidence, the police possessed sufficient probable cause to arrest the defendant and to conduct a full-blown search of the vehicle (see, People v Brown, 116 AD2d 727, 729). All of the evidence discovered as an incident thereto is, therefore, similarly admissible at trial.

Finally, we find that the defendant expressly waived his constitutional right against self-incrimination after he was administered the *Miranda* warnings and that the oral statements made to law enforcement officials should not have been suppressed.

The matter is, accordingly, remitted to the Supreme Court, Suffolk County, for further proceedings. Gibbons, J. P., Weinstein, Eiber and Kooper, JJ., concur.