**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUL 25 2017

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-30108 |
| Plaintiff-Appellee, | D.C. No. 2:15-cr-00011-TOR-1 |
| v. | |
| MICHAEL CURTIS PAINTER, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, Chief Judge, Presiding

Argued and Submitted May 11, 2017
Seattle, Washington

Before: McKEOWN, BEA, and N.R. SMITH, Circuit Judges.

Michael Painter appeals two issues related to his conviction and sentence for being a felon in possession of a firearm. We have jurisdiction under 28 U.S.C. § 1291 and reverse. Because the parties are familiar with the factual and procedural background, we repeat only those facts necessary to resolve the issues raised on appeal.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Painter argues that the police officers discovered the gun in his car by means of a constitutionally impermissible warrantless search: the officer reached into the car to move the airbag out from in front of the open glove compartment and looked into this compartment.[1]

The government does not dispute that the police officers' actions here constituted a Fourth Amendment search because the police physically occupied private property (the car's interior and airbag) for the purpose of obtaining information (the vehicle registration information thought to be located behind the airbag in the glove box). *See United States v. Jones*, 565 U.S. 400, 404-11 (2012).

Because the Fourth Amendment protects against only unreasonable searches, however, resolving whether the search of Painter's vehicle was constitutionally permissible requires determining whether it was reasonable. As the Supreme Court explained in *New York v. Class*:

> [T]here is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, justifiably warrant that intrusion.

475 U.S. 106, 116-17 (1986) (alterations in original) (citation omitted).

The Supreme Court found the officer's actions in *Class* (reaching into

---

[1] The district court found that the search was neither authorized by the search-incident-to-arrest doctrine nor by the automobile exception to the search warrant requirement. On appeal, the government does not argue to the contrary.

defendant's vehicle to remove papers obscuring the VIN) constituted a constitutionally-permissible reasonable search for several reasons. Namely, the Supreme Court noted that "the safety of the officers was served by the governmental intrusion; the intrusion was minimal;…the search stemmed from some probable cause focusing suspicion on the individual affected by the search," and the intrusion served the government's interest in motor vehicle regulation. 475 U.S. at 113-14, 117-18. It is worth emphasizing that the intrusion in *Class* was minimal because the officer "did not reach into any compartments or open any containers." *Id*. at 118. However, although Painter had just run a red light before his accident, *Class* is not applicable to the search of Painter's vehicle for several important reasons. First, unlike in *Class*, the record in this case does not establish (nor does the government argue) that searching Painter's vehicle would have protected the safety of the police officers at the scene. Second, in this case the officer searched a private container of the vehicle (knocked open in the accident, but covered by a deployed airbag), whereas in *Class* the officer searched merely to identify the VIN, which is designed to be viewable from outside the vehicle. *Id*. at 114 ("The VIN's mandated visibility makes it more similar to the exterior of the car than to the trunk or glove compartment"). Third, the officer's search of Painter's vehicle does not appear to have furthered meaningfully the government's interest in regulating motor vehicles, because Painter's vehicle could have been

3

readily identified through either its license plate or publicly viewable VIN.

In *United States v. Brown*, the Ninth Circuit found reasonable and constitutionally permissible a police search of a defendant's vehicle's glove box to locate registration information after the defendant "failed to produce a driver's license as required by state law, responded vaguely to a question regarding the vehicle's ownership, failed to produce the vehicle registration as required by state law, and was found in the illegal possession of chemical mace." 470 F.2d 1120, 1122 (9th Cir. 1972). This court found that "these facts were amply sufficient to establish a police right to inspect the vehicle for the limited purpose of ascertaining the vehicle registration." *Id*. (footnotes omitted). As with *Class*, *Brown* is not applicable here because there is no evidence in the record that Painter refused to produce a driver's license and registration or that he answered vaguely any question posed by officers. The record in Painter's case simply does not establish the same "facts [that] were amply sufficient" to justify the search in *Brown*.

Considering the facts of this case, none of the "specific and articulable facts…justifiably warrant[ed] [this] intrusion." *Class*, 475 U.S. at 116-17. First, while the ostensible purpose of invading Painter's glove box was to retrieve his car's registration information, such information would be readily available by looking at either the car's license plate or publicly viewable VIN and running such information through the police computers. There is no evidence in the record that

4

either the license plate or VIN were obscured or destroyed in the accident or that the police computers were offline or otherwise unable to process such information. Second, even assuming that such alternative methods for obtaining the registration information were not available to the police officers, the record does not establish (and the government does not argue) that there was any exigency that demanded such registration information be immediately identified before a warrant could be obtained. Finally, while there is some evidence in the record that Painter was dazed after getting out of his wrecked car, there is no indication he was unable to communicate with the police officers or that his dazed condition provided any other justification for the search. To the contrary, the record establishes that Painter was sufficiently aware and responsive to interact with the police officers and follow their instructions to climb over the center console of his vehicle and out of the passenger-side door. Taken together, these "specific and articulable facts" do not justify under the Fourth Amendment the police officer's physical occupation and intentional search into a private container in Painter's vehicle.

For these reasons, we remand the case with instructions for the district court to suppress the evidence of Painter's possession of a firearm.[2]

---

[2] We decline to address here whether Washington's second degree assault offense (RCW § 9A.36.021(1)(a)–(f)) is categorically a crime of violence because the above-discussed unlawfulness of the police's search of Painter's vehicle renders this issue moot.

5

**REVERSED AND REMANDED.**