JUSTICE MIMS, dissenting.
 

 The majority holds that Officer Rhodes' search was permitted under the automobile exception to the Fourth Amendment's warrant requirement. However, Officer Rhodes did not search an automobile, he searched a tarp. I therefore must respectfully dissent.
 

 The majority accurately recounts the relevant facts. Officer Rhodes went to a house shown in Collins' Facebook photograph.
 
 [1]
 
 There, Officer Rhodes saw from the public street an object covered by a white tarp on
 the paved driveway running alongside the front yard. The shape and contours of the object were visible through the tarp and suggested that the object it covered was an extended motorcycle similar to the one he had attempted to stop a few weeks earlier. The lower half of the front wheel of the motorcycle was exposed to view outside the tarp and its features were also similar to those of the motorcycle he had attempted to stop. Officer Rhodes then entered the driveway, approached the motorcycle parked beside the house, removed the tarp, and exposed the vehicle identification number. Using the vehicle identification number, Officer Rhodes learned that the motorcycle was stolen and arrested Collins.
 

 The majority holds that Officer Rhodes' warrantless search was permitted by the automobile exception. However, the automobile exception permits a warrantless search
 
 of
 
 a vehicle, not
 
 for
 
 a vehicle.
 
 See
 

 Maryland v. Dyson
 
 ,
 
 527 U.S. 465
 
 , 466,
 
 119 S.Ct. 2013
 
 , 2014,
 
 144 L.Ed.2d 442
 
 (1999) ("The Fourth Amendment generally requires police to secure a warrant before conducting a search. As we recognized nearly 75 years ago ..., there is an exception to this requirement for searches
 
 of
 
 vehicles." (internal citations omitted) (emphasis added)). As the majority notes, the automobile exception, distilled to its essence, provides that "[i]f a car is readily mobile and probable cause exists to believe it
 
 contains
 
 contraband, the Fourth Amendment ... permits police to search the vehicle without more."
 

 Id.
 

 at 467
 
 ,
 
 119 S.Ct. at 2014
 
 (internal quotation marks omitted) (ellipsis in original) (emphasis added). The motorcycle did not
 
 contain
 
 contraband, it
 
 was
 
 contraband; Officer Rhodes did not search the motorcycle, he searched the tarp.
 

 Although the majority repeatedly says that Officer Rhodes "searched the motorcycle" and merely "remov[ed]" or "lift[ed]" the tarp,
 
 supra
 
 at ----, ----, 790 S.E.2d at 616, 619-20, the tarp was the only thing searched. Searching the tarp revealed the motorcycle. Once the motorcycle was exposed by searching the tarp, examining the motorcycle's vehicle identification number was not a search because vehicle identification numbers are not protected by the Fourth Amendment.
 
 New York v. Class
 
 ,
 
 475 U.S. 106
 
 , 113-14,
 
 106 S.Ct. 960
 
 , 965-66,
 
 89 L.Ed.2d 81
 
 (1986) (holding that there is no reasonable expectation of privacy in a vehicle identification number, which is required by law to be in public view while the vehicle is being operated). "The exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a 'search.' "
 

 Id.
 

 at 114
 
 ,
 
 106 S.Ct. at 966
 
 .
 
 [2]
 
 In short, it does not matter that the motorcycle is a vehicle, because it was not searched. Accordingly, the automobile exception to the warrant requirement does not apply here.
 
 [3]
 

 There is no question that Officer Rhodes was entitled to observe whatever he could see from the street.
 

 California v. Ciraolo
 
 ,
 
 476 U.S. 207
 
 , 213,
 
 106 S.Ct. 1809
 
 , 1812,
 
 90 L.Ed.2d 210
 
 (1986) ("The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares.") He may even have been entitled to enter the driveway to get a closer look at the tarp or the part of the motorcycle already exposed to public view, perhaps to confirm his impression that the shape, contours, and wheel matched those of the motorcycle that had previously eluded him.
 
 Oliver v. United States
 
 ,
 
 466 U.S. 170
 
 , 180,
 
 104 S.Ct. 1735
 
 , 1742,
 
 80 L.Ed.2d 214
 
 (1984) (differentiating open fields, for which officers need no warrant to enter and observe what they see with their naked eyes, from curtilage).
 
 [4]
 
 But he was not entitled to search the tarp to reveal what it covered without a warrant.
 

 Accordingly, I dissent from the majority's opinion that Officer Rhodes' warrantless search was permitted by the automobile exception to the Fourth Amendment's warrant requirement.
 

 The house was later established to be the home of Kandace Beach, Collins' girlfriend and the mother of his child, where Collins occasionally stayed overnight.
 

 The vehicle in
 
 Class
 
 had been stopped for being driven "above the speed limit [and] with a cracked windshield."
 
 475 U.S. at 108
 
 , 106 S.Ct. at 961. Unlike the vehicle in
 
 Class
 
 , the motorcycle here was parked in a private driveway rather than being operated on a public highway, and its exterior was not "thrust into the public eye" but was concealed from the public eye-by the tarp.
 

 Although the majority opinion says Collins did not challenge the search of the tarp, that statement is contradicted by the record. At the hearing on Collins' motion to suppress, the Commonwealth characterized the search as one of the tarp: "The removal of the tarp covering the motorcycle was lawful under the [Fourth] Amendment and the information gained from the removal should not be suppressed." Collins responded seconds later by arguing that "the automobile exception ... is the search
 
 of
 
 the automobile not a search
 
 for
 
 an automobile." (Emphases added.)
 

 The distinction is readily apparent. If a police officer lawfully stops a known felon and sees a pistol-shaped bulge in the pocket of a coat he is carrying and the grip of a pistol protrudes from the opening, the search that will ensue is one
 
 of the coat
 
 , not
 
 of the pistol
 
 , even if the search of the coat is
 
 for
 
 the pistol and a purpose of the search is to obtain the pistol's serial number, which replicates an automobile's vehicle identification number in this example.
 
 18 U.S.C. § 923
 
 (i) (requiring all licensed firearms manufacturers or importers to engrave or cast a serial number on the receiver or frame of a firearm);
 
 27 C.F.R. § 478.92
 
 (a)(1)(i) (specifying visibility requirements for such serial numbers);
 
 see also
 

 New Jersey v.
 

 Harris
 
 ,
 
 211 N.J. 566
 
 ,
 
 50 A.3d 15
 
 , 28-29 (2012) (holding that there is no reasonable expectation of privacy in a firearm's serial number when the firearm is exposed to public view).
 

 As the Supreme Court has held, actions taken to expose a serial number or other identifying mark that is not already in plain view constitute a search.
 
 Arizona v. Hicks
 
 ,
 
 480 U.S. 321
 
 , 324-25,
 
 107 S.Ct. 1149
 
 , 1152,
 
 94 L.Ed.2d 347
 
 (1987) (holding that moving stereo equipment to obtain its serial number constituted a search). There is a "distinction between looking at a suspicious object in plain view and moving it even a few inches [that] is much more than trivial for purposes of the Fourth Amendment."
 

 Id.
 

 at 325
 
 ,
 
 107 S.Ct. at 1152
 
 (internal quotation marks omitted). That is especially true where, as here, an independent object is moved to expose the serial number or other identifying mark.
 

 Based on the photograph taken by Officer Rhodes and admitted into evidence at trial, the driveway is the only route by which to travel from the street to the front porch and front door without walking on the lawn. However, the driveway extends past the house, running alongside it after the front yard ends, and continues well beyond the front porch and front door to allow vehicles to be parked beside the house. Officer Rhodes' photograph shows that the covered motorcycle was parked in this part of the driveway, beyond the front perimeter wall of the house, past the front porch and front door, and that it was merely feet-no more than the width of the sport-utility vehicle parked in front of it-from the side perimeter wall of the house.
 

 The law "regard[s] the area immediately surrounding and associated with the home-what our cases call the curtilage-as part of the home itself for Fourth Amendment purposes. ... This area around the home is intimately linked to the home, both physically and psychologically, and is where privacy expectations are most heightened."
 
 Florida v. Jardines
 
 , ---U.S. ----,
 
 133 S.Ct. 1409
 
 , 1414-15,
 
 185 L.Ed.2d 495
 
 (2013) (internal quotation marks omitted).
 

 I do not address the question of whether the part of the driveway where the motorcycle was parked, within feet of the side of a house in a residential suburban neighborhood and as immediately surrounding the home as possible without being inside it, was curtilage or open field for Fourth Amendment purposes. Searching the tarp without a warrant was unconstitutional even if the area where the motorcycle was parked is considered to be open field.
 
 Husband v. Bryan
 
 ,
 
 946 F.2d 27
 
 , 29 (5th Cir. 1991) (noting that the open fields doctrine permits observation only);
 
 see also
 

 United States v. Dunn
 
 ,
 
 480 U.S. 294
 
 , 304,
 
 107 S.Ct. 1134
 
 , 1141,
 
 94 L.Ed.2d 326
 
 (1987) ( "[T]here is no constitutional difference between police
 
 observations
 
 conducted while in a public place and while standing in the open fields." (emphasis added));
 
 Allinder v. Ohio
 
 ,
 
 808 F.2d 1180
 
 , 1185 (6th Cir. 1987) (noting that the doctrine allows officers to enter open fields but not to search personal effects found there).