# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 19-188

STATE OF LOUISIANA

VERSUS

BRANDON NOLAN

**********

SUPERVISORY WRIT FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 61780
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of John D. Saunders, John E. Conery, and Van H. Kyzar, Judges.

**WRIT DENIED.**

Conery, J., dissents and assigns written reasons.

Keith A. Stutes
District Attorney
Fifteenth Judicial District
P. O. Box 3306
Lafayette, LA 70502-3306
(337) 232-5170
COUNSEL FOR RESPONDENT:
    State of Louisiana

**Ted L. Ayo**
**Attorney at Law**
**10 S. St. Charles St.**
**Abbeville, LA 70510-5108**
**(800) 880-1117**
**COUNSEL FOR RESPONDENT:**
**State of Louisiana**

**Sean Brucker**
**15th J.D. Public Defender's Office**
**204 Charity Street**
**Abbeville, La 70510**
**(337) 898-2090**
**COUNSEL FOR DEFENDANT/APPLICANT:**
**Brandon Nolan**

**SAUNDERS, Judge.**

Defendant, Brandon Nolan, was charged by bill of information filed on May 15, 2017, with unauthorized use of a motor vehicle, a violation of La.R.S. 14:68.4, and flight from an officer, a violation of La.R.S. 14:108.1. Defendant filed a motion to suppress with memorandum in support thereof on July 25, 2018. The trial court denied the motion at a hearing held on January 31, 2019.

## FACTS AND PROCEDURAL HISTORY

Defendant filed a notice of intent to seek review of the trial court's ruling on February 1, 2019. A return date, which was timely extended, was set. Defendant is now before this court via application for writ of supervisory review seeking reversal of the trial court's denial of his motion to suppress.

## ON THE MERITS

In his only assignment of error, Defendant contends the trial court erred in denying his motion to suppress because law enforcement entered the curtilage of his home without a warrant to check the Vehicle Identification Number (VIN) of the car he was allegedly driving.

> The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Similarly, the Louisiana Constitution provides that "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." La. Const. art. 1, § 5. As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. Warrantless searches and seizures are considered to be per se unreasonable unless they can be justified by one of the Fourth Amendment's warrant exceptions. *State v. Freeman*, 97-1115 (La.App. 5 Cir. 12/29/98), 727 So.2d 630. The state has the burden of showing that one of the exceptions applies. *Id.*

*State v. Vail*, 17-354, pp. 46-47 (La.App. 3 Cir. 12/28/17), 236 So.3d 644, 676, *writ denied*, 18-202 (La.App. 3 Cir. 11/20/18), 256 So.3d 998, *cert. denied*, __ U.S. __,

139 S.Ct. 1232 (2019). *See also* La.Code Crim.P. art. 703(D). "'The trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent abuse of that discretion.' *State v. Lee*, 05-2098, p. 15 (La. 1/16/08), 976 So.2d 109, 123." *Vail*, 236 So.3d at 678.

In his motion, Defendant sought to suppress all evidence and testimony regarding the VIN of the vehicle he was driving when he was arrested. He alleged the viewing of the VIN by police was an unconstitutional search because it was conducted during an unlawful warrantless intrusion into the curtilage of his home. Furthermore, even if the intrusion into the curtilage was not unlawful, the search of the vehicle was not a search incident to arrest and the automobile exception did not apply. Defendant relied on *Collins v. Virginia*, ___ U.S. ___, 138 S.Ct. 1663 (2018), to support his claims. In *Collins*, the Supreme Court was called upon to determine whether the automobile exception permitted the warrantless entry of a home or its curtilage in order to search a vehicle therein. The Supreme Court found that it did not.

The State called a single witness at the hearing on Defendant's motion to suppress. Officer Joshua Hebert was employed by the Abbeville Police Department on February 1, 2017. He observed Defendant driving a maroon GMC Yukon on Charity Street. Defendant was not wearing a seat belt. Officer Hebert activated the vehicle's lights. Defendant either flagged Officer Hebert to follow him or go around him. Officer Hebert then activated the vehicle's siren and "called in the vehicle for refusing to stop." Defendant stopped six or seven blocks later at his residence. Defendant pulled "head first" into the driveway "in front of the front door." Officer Hebert pulled up behind Defendant. Defendant was placed on the ground because he refused to stop. He was then handcuffed. Backup officers subsequently arrived.

2

Detective Trent Guidry ran the VIN on the Yukon, and it came back stolen from Harris County, Texas. The VIN was visible through the front windshield, and police had to stand in the driveway to see it. Defendant had been handcuffed and arrested at that time. Police did not have a search warrant. Defendant's residence was depicted in Defense Exhibit 1.

The trial court denied the motion, finding the case distinguishable from *Collins*, as Defendant was running away.

In his writ application, Defendant argues police entered the curtilage of his home to search the vehicle without a warrant, and there were no exigent circumstances present that would have permitted such entry without a warrant. Defendant asserts the State attempted to justify the intrusion by claiming his failure to stop was an exigent circumstance. However, even if that were true, hot pursuit did not justify a search of his curtilage after police had already arrested him. The State presented no evidence suggesting that destruction of evidence was a concern. Moreover, the evidence was not in plain view. Defendant contends the search in this case is identical to that in *Collins.*

We now discuss the facts of *Collins.* During the investigation of two traffic incidents involving an orange and black motorcycle with an extended frame, Officer David Rhodes learned that the motorcycle was probably stolen and in Collins' possession. Officer Rhodes discovered photographs on Collins' Facebook profile of an orange and black motorcycle parked in the driveway of a house, drove to the house, and parked on the street. From there, he could see what appeared to be the motorcycle under a white tarp parked in the same location as the motorcycle in the photograph. Without a search warrant, Office Rhodes walked to the top of the driveway, removed the tarp, confirmed that the motorcycle was stolen by running the license plate and vehicle identification numbers, took a photograph of the

3

uncovered motorcycle, replaced the tarp, and returned to his car to wait for Collins.

When Collins returned, Officer Rhodes arrested him.

In *Collins*, the Supreme Court discussed the meaning of curtilage as follows:

> [T]the Fourth Amendment's protection of curtilage has long been black letter law. "[W]hen it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 569 U.S. 1, 6, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013). "At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " *Ibid.* (quoting *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)). To give full practical effect to that right, the Court considers curtilage— "the area 'immediately surrounding and associated with the home' "— to be " 'part of the home itself for Fourth Amendment purposes.' " *Jardines*, 569 U.S., at 6, 133 S.Ct. 1409 (quoting *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)). "The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." *California v. Ciraolo*, 476 U.S. 207, 212–213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).
>
> When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred. *Jardines*, 569 U.S., at 11, 133 S.Ct. 1409. Such conduct thus is presumptively unreasonable absent a warrant.

*Id.* at 1670.

> The Supreme Court described the driveway where the motorcycle was parked:
>
> [T]he driveway runs alongside the front lawn and up a few yards past the front perimeter of the house. The top portion of the driveway that sits behind the front perimeter of the house is enclosed on two sides by a brick wall about the height of a car and on a third side by the house. A side door provides direct access between this partially enclosed section of the driveway and the house. A visitor endeavoring to reach the front door of the house would have to walk partway up the driveway, but would turn off before entering the enclosure and instead proceed up a set of steps leading to the front porch. When Officer Rhodes searched the motorcycle, it was parked inside this partially enclosed top portion of the driveway that abuts the house.

*Id.* at 1670-71. The Court found the area where the motorcycle was parked was

curtilage, stating:

> The " 'conception defining the curtilage' is . . . familiar enough that it is 'easily understood from our daily experience.' " *Jardines*, 569

U.S., at 7, 133 S.Ct. 1409 (quoting *Oliver*, 466 U.S., at 182, n. 12, 104 S.Ct. 1735). Just like the front porch, side garden, or area "outside the front window," *Jardines*, 569 U.S., at 6, 133 S.Ct. 1409, the **driveway enclosure** where Officer Rhodes searched the motorcycle constitutes "an area adjacent to the home and 'to which the activity of home life extends,' " and so is properly considered curtilage, *id.*, at 7, 133 S.Ct. 1409 (quoting *Oliver*, 466 U.S., at 182, n. 12, 104 S.Ct. 1735).

*Id.* at 1671 (emphasis added).

In *Collins*, Virginia cited *Scher v. United States*, 305 U.S. 251, 59 S.Ct. 174 (1938), in support of its argument that the area where the motorcycle was located was not curtilage. In *Scher*, federal officers received a confidential tip that a particular car would be transporting bootleg liquor at a specified time and place. Police identified and followed the car until the driver turned into a garage "a few feet back of his residence and within the curtilage." *Id.* at 253. As the driver exited his car, an officer approached and told the driver that he had been informed the car was carrying contraband. The driver acknowledged that there was liquor in the trunk, and the officer opened the trunk, found the liquor, arrested the driver, and seized both the car and the liquor. Although the officer did not have a search warrant, the Supreme Court upheld the officer's actions as reasonable. In *Collins*, the Supreme Court distinguished *Scher* as follows:

> *Scher* is inapposite. Whereas Collins' motorcycle was parked and unattended when Officer Rhodes intruded on the curtilage to search it, the officers in *Scher* first encountered the vehicle when it was being driven on public streets, approached the curtilage of the home only when the driver turned into the garage, and searched the vehicle only after the driver admitted that it contained contraband. *Scher* by no means established a general rule that the automobile exception permits officers to enter a home or its curtilage absent a warrant. The Court's brief analysis referenced *Carroll* [*v. United States*, 267 U.S. 132, 45 S.Ct. 280 (1925)], but only in the context of observing that, consistent with that case, the "officers properly could have stopped" and searched the car "just before [petitioner] entered the garage," a proposition the petitioner did "not seriously controvert." *Scher*, 305 U.S., at 254–255, 59 S.Ct. 174. The Court then explained that the officers did not lose their ability to stop and search the car when it entered "the open garage closely followed by the observing officer" because "[n]o search was made of the garage." *Id.*, at 255, 59 S.Ct. 174. It emphasized that

5

> "[e]xamination of the automobile accompanied an arrest, without objection and upon admission of probable guilt," and cited two search-incident-to-arrest cases. *Ibid.* (citing *Agnello v. United States*, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925); *Wisniewski v. United States*, 47 F.2d 825, 826 (C.A.6 1931)). *Scher*'s reasoning thus was both case specific and imprecise, sounding in multiple doctrines, particularly, and perhaps most appropriately, hot pursuit. The decision is best regarded as a factbound one, and it certainly does not control this case.

*Collins*, 138 S.Ct. at 1674.

Virginia also cited *Pennsylvania v. Labron*, 518 U.S. 938, 116 S.Ct. 2485 (1996) (per curiam), in support of its argument. Therein, the Supreme Court held a warrantless search of a truck parked in the driveway of defendant's father-in-law's farmhouse was proper under the automobile exception. The *Collins* court found the case provided little support for Virginia's position, as "there was no indication that the individual who owned the truck in *Labron* had any Fourth Amendment interest in the farmhouse or its driveway, nor was there a determination that the driveway was curtilage." *Collins*, 138 S.Ct. at 1674.

In *United States v. Santana*, 427 U.S. 38, 43, 96 S.Ct. 2406, 2410 (1976), the Supreme Court concluded that "a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping into a private place." In that case, police made a narcotics purchase from a woman. The woman took money from an officer and returned with drugs. The police arrested her and demanded to know where the money was. The woman informed them that Santana had it. When the police first approached Santana, she was standing in the front doorway of her home. However, when the police approached Santana and identified themselves, she retreated into her home. The police chased her inside and detained her. When Santana was told to empty her pockets, she produced the money the police had originally paid the woman. The Court characterized the short chase as a "true 'hot pursuit.'" *Id.* 427 U.S. at 42.

6

*Collins* is distinguishable from the case at bar. The vehicle driven by Defendant was pulled into the driveway in front of the front door, and the motorcycle in question in *Collins* was parked near the house, beyond where a visitor would enter the walkway to the front door. Police were lawfully in Defendant's driveway, as Defendant had failed to stop when Officer Hebert activated his lights and siren, and Defendant eventually stopped his vehicle at his residence. It would be unreasonable to believe one could avoid arrest by fleeing to the curtilage of the home. *Cf. Santana,* 427 U.S. 38; *Scher*, 305 U.S. 25.

Moreover, in *New York v. Class*, 475 U.S. 106, 113-14, 106 S. Ct. 960, 965-66 (1986), the Supreme Court discussed the expectation of privacy in a VIN, for Fourth Amendment purposes, as follows:

> [T]he VIN plays an important part in the pervasive regulation by the government of the automobile. A motorist must surely expect that such regulation will on occasion require the State to determine the VIN of his or her vehicle, and the individual's reasonable expectation of privacy in the VIN is thereby diminished. This is especially true in the case of a driver who has committed a traffic violation. See *Delaware v. Prouse*, *supra*, 440 U.S. [648], at 659, 99 S.Ct. [1391], at 1399 [(1979)] ("The foremost method of enforcing traffic and vehicle safety regulations . . . is acting upon observed violations. *Vehicle stops for traffic violations occur countless times each day; and on these occasions, licenses and registration papers are subject to inspection and drivers without them will be ascertained*") (emphasis added). In addition, it is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile. The VIN's mandated visibility makes it more similar to the exterior of the car than to the trunk or glove compartment. The exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a "search." See *Cardwell v. Lewis*, supra, 417 U.S. [583], at 588–589, 94 S.Ct. [2464], at 2468 [(1974)]. In sum, because of the important role played by the VIN in the pervasive governmental regulation of the automobile and the efforts by the Federal Government to ensure that the VIN is placed in plain view, we hold that there is no reasonable expectation of privacy in the VIN.

## CONCLUSION

Defendant seeks review of the trial court's January 31, 2019 denial of his motion to suppress. Defendant may not retreat to the curtilage of his home to avoid arrest. *Cf. Scher v. United States*, 305 U.S. 251, 59 S.Ct. 174 (1938); *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406 (1976). Furthermore, there is no reasonable expectation of privacy in a Vehicle Identification Number. *New York v. Class*, 475 U.S. 106, 106 S. Ct. 960 (1986). Accordingly, Defendant's writ application is denied.

**WRIT DENIED.**

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-188

## STATE V. BRANDON NOLAN

Conery, J., dissents and assigns reasons.

I respectfully dissent.

The picture introduced in evidence shows the private driveway alongside defendant's home. The evidence at the hearing is undisputed that the defendant had pulled his car fully into the driveway alongside his home, front first, facing away from the street.

As shown by the photo, the driveway area where the vehicle was parked is clearly part of the curtilage of the home and thus given special protection by the Fourth Amendment. The arresting officer testified as follows:

Q.     - - That VIN was not visible from the street, correct?

A.     No, it wasn't.

Q.     You had to go around to the other side of the driveway to view the VIN?

A.o - - I mean, the driver's side was towards - - facing the South and they just had to walk to the - - to see the VIN number right there.

Q.     They were standing in the driveway to do that?

A.     Correct.

Q.     And when they went into the driveway to view the VIN, at that point, Mr. Nolan had already been placed in handcuffs?

A.     Yes, he was already under arrest?

Q.     I'm sorry?

A.     He was already under arrest.

Q. Okay. So he was under arrest before you - - before anyone looked at the VIN?

A. Correct.

Q. And when you went to look at the VIN, you didn't have a warrant for the property, correct?

A. No. sir.

Q. So you didn't have a warrant for - - to search the area of the home?

A. No.

The U. S. Supreme Court jurisprudence in this area of the law is clear. As Justice Scalia outlined in *Florida v. Jardines*, 56 U.S. 1, 6-7, 133 S.Ct. 1409, 1415-16 (2013):

> But when it comes to the Fourth Amendment, the home is first among equals. At the Amendment's "very core" stands "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S., 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). This right would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window.

> We therefore regard the area "immediately surrounding and associated with the home" – what our cases call the curtilage – as "part of the home itself for Fourth Amendment purposes." *Oliver* [*v. United States*, 466 U.S. 170, 180, 140 S.Ct. 1735, 1742 (1984)]. That principle has ancient and durable roots. Just as the distinction between the home and the open fields is "as old as the common law," *Hester* [*v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 446 (1924)], so too is the identity of home and what Blackstone called the "curtilage or homestall," for the "house protects and privileges all its branches and appurtenants." 4 W. Blackstone, Commentaries on the Laws of England 223, 225 (1769). This area around the home is "intimately linked to the home, both physically and psychologically," and is where "privacy expectations are most heightened." *California v. Ciraolo*, 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).

> While the boundaries of the curtilage are generally "clearly marked," the "conception defining the curtilage" is at any rate familiar enough that it is "easily understood from our daily experience."

*Oliver*, 466 U.S., at 182, n. 12, 104 S.Ct. 1735. Here there is no doubt that the officers entered it: The front porch is the classic exemplar of an area adjacent to the home and "to which the activity of home life extends." *Ibid.*

In a more recent case, *Collins v. Virginia*, _ U.S. _, _, 138 S.Ct. 1663, 1670-1672 (2018) (emphasis added), the U.S. Supreme Court noted:

"At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " [*Jardines*, 569 U.S. at 6] (quoting *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)). To give full practical effect to that right, the Court considers curtilage – "the area 'immediately surrounding and associated with the home' " – to be " 'part of the home itself for Fourth Amendment purposes.' " *Jardines*, 569 U.S., at 6, 133 S.Ct. 1409 (quoting *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)). "The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." *California v. Ciraolo*, 476 U.S. 207, 212-213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).

When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred. *Jardines*, 569 U.S., at 11, 133 S.Ct. 1409. Such conduct thus is presumptively unreasonable absent a warrant.

. . . .

… Just like the front porch, side garden, or area "outside the front window," *Jardines*, 569 U.S., at 6, 133 S.Ct. 1409, the **driveway enclosure** where Officer Rhodes searched the motorcycle constitutes "an area adjacent to the home and 'to which the activity of home life extends,' " and so is properly considered curtilage, *id*., at 7, 133 S.Ct. 1409 (quoting *Oliver*, 466 U.S., at 182, n. 12, 104 S.Ct. 1735).

. . . .

… Likewise, searching a vehicle parked in the curtilage involves not only the invasion of the Fourth Amendment interest in the vehicle but also an invasion of the sanctity of the curtilage.

Just as an officer must have a lawful right of access to any contraband he discovers in plain view in order to seize it without a warrant, and just as an officer must have a lawful right of access in order to arrest a person in his home, so, too, an officer must have a lawful right of access to a vehicle in order to search it pursuant to the automobile exception. The automobile exception does not afford the

necessary lawful right of access to search a vehicle parked within a home or its curtilage because it does not justify an intrusion on a person's separate and substantial Fourth Amendment interest in his home and curtilage.

While it would have been permissible to view the VIN number through the windshield had the defendant stopped on the street, and may even have been permissible had the officer in hot pursuit approached the defendant after failing to stop his vehicle while the defendant was still in his vehicle in his driveway, in this case the evidence is uncontroverted that the defendant got out of his vehicle and was ordered on the ground behind the vehicle. He was arrested, actually taken into custody and placed in the police unit. The officer's actions to thereafter intrude onto his property and walk to the front of his car located within the curtilage and view the VIN number became, in my view, an unconstitutional fourth amendment search clearly prohibited by *Jardines* and *Collins.*

As was stated in *Mincey v. Arizona*, 437 U.S. 385, 393-94, 98 S.Ct. 2408, 2413-14 (1978) (internal citations omitted):

> [A] warrantless search must be "strictly circumscribed by the exigencies which justify its initiation,"
>
> . . . .

In *State v Parker*, 355 So.2d 900, 906 (La.1978), our supreme court further noted:

> In the present case, the warrantless seizure effected an intrusion upon defendant's interest in the privacy of his automobile which was not justified by any superior interests. At the time Officer Daigle entered the car, no exigent circumstances existed. The mere fact that an automobile is involved does not create exigent circumstances. *Coolidge v. New Hampshire*, [403 U.S. 443, 91 S.Ct. 2022 (1971)].
>
> We hold that the defendant's rights under the Fourth Amendment and those afforded by Article 1, [§] 5 of the Louisiana Constitution of 1974 were violated by the warrantless seizure of evidence from his car. The ruling of the trial court on the motion to

suppress is reversed, and the motion to suppress is sustained, and the case is remanded to the district court for further proceedings.

## CONCLUSION

Since it is uncontradicted that defendant had already been arrested and handcuffed while on the ground outside his automobile and had already been taken into custody and placed in the police unit, any further intrusion onto the curtilage of his home would constitute an unconstitutional search and seizure under the cases cited. I would reverse and grant the motion to suppress the VIN evidence.