J-S27004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID ALLEN MYERS | : | |
| | : | |
| Appellant | : | No. 317 MDA 2023 |

Appeal from the Judgment of Sentence Entered February 14, 2023
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0001565-2021

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.:              **FILED: OCTOBER 25, 2023**

David Allen Myers, Appellant, appeals from the judgment of sentence imposed following a non-jury trial for several convictions of driving under the influence of alcohol (DUI), imposed following a non-jury trial.  We affirm.

At the suppression hearing, the Commonwealth called Trooper Michael Bivens of the Pennsylvania State Police, who testified that on November 3, 2021, he noticed Appellant operating a pickup truck lacking an inspection sticker.  He turned around to follow Appellant and saw that Appellant had pulled into a driveway.  At this point, Trooper Bivens had not activated his lights or sirens, as he "believed [Appellant] was in his own driveway."  N.T., 5/17/22, at unnumbered 14.[1]  He then approached the vehicle, telling Appellant, "this is about your inspection sticker."  *Id.* at 9.  Appellant replied

---

[1] It was not Appellant's driveway.

that the vehicle was an antique and therefore did not require inspection; Trooper Bivens informed him that the license plate did not show that designation. Appellant then "admitted that it wasn't a registered vehicle[.]" *Id.* Trooper Bivens asked for paperwork related to the vehicle. Appellant handed over his identification and told him that his license was suspended and that he did not have any insurance. *Id.* at 24. Trooper Bivens then attempted to observe the VIN[2] through the window but was not able to see it due to the vehicle's height; he then asked Appellant to open the door panel. Appellant "opened it and I wrote the VIN down on my notepad" to conduct a records check. *Id.* at 25. After obtaining the VIN, Trooper Bivens "returned to [his] vehicle to get the records and nothing [came] back from the registration" check. *Id.* at 11. At this point in time, he had not noticed anything unusual about Appellant except bloodshot eyes. A check of Appellant's ID confirmed that his license was suspended for a DUI.

Trooper Bivens then returned to speak to Appellant "to make sure that I wrote the VIN down correctly[.]" *Id*. The trooper "informed [Appellant that] I needed to re-verify the VIN or recheck the VIN to ensure I recorded it correctly the first time and I opened the door to do so." *Id.* at 28. He then smelled "an odor of alcohol on [Appellant's] breath and [Appellant] did admit

---

[2] Federal regulations require that "each motor vehicle must contain a vehicle identification number, also known as a VIN, which is a 17-character number that encodes specific information about the particular vehicle." *See Vin Decoder*, NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION, https://www.nhtsa.gov/vin-decoder (last visited Sept. 26, 2023).

to drinking … three beers." ***Id.*** at 11. Trooper Bivens asked Appellant to step outside the vehicle to perform field sobriety tests. Due to Appellant's performance on these tests and other indicia of intoxication, Appellant was arrested. He consented to a blood draw and was charged with three counts of DUI, driving under a license suspension, and one summary offense pertaining to the invalid inspection.

Appellant filed a motion to suppress, arguing that Trooper Bivens "opened the driver's side door of the vehicle" without permission.[3] The trial court denied suppression by order and accompanying opinion, and Appellant proceeded to a bench trial, where the Commonwealth called Trooper Bivens to relate the above events, as well as Jolene Bierly, a forensic toxicologist. Ms. Bierly testified that Appellant's blood alcohol content (BAC) was .169. Additionally, his blood contained Tramadol, "a prescription opioid commonly used to treat pain at a concentration of 35 plus or minus 11 nanograms per milliliter." N.T., 12/14/22, at 42.

Appellant was convicted of driving with a BAC between 0.10 and 0.16, 75 Pa.C.S. § 3802(b); driving while under the combined effects of a drug and alcohol, 75 Pa.C.S. § 3802(d)(3); driving under a suspended license, 75 Pa.C.S. § 1543(b)(1.1)(iii), which was a third offense; and a summary offense regarding the invalid inspection. In its sentencing order, the trial court noted that this was Appellant's eighth DUI offense overall, with each prior incident

---

[3] In this motion, Appellant did not distinguish the two separate times Appellant's door was opened.

resulting in intermediate punishment. The court imposed an above-guidelines range sentence of 3½ to 7 years of incarceration at the Section 3802(d)(3) offense, which the court deemed to merge with the Section 3802(b) offense. The Section 1543(b)(1.1) offense required a mandatory minimum of two years, and the court imposed a sentence of two to four years, concurrent to the foregoing term. No additional penalty was imposed for the summary offense. Appellant did not file a post-sentence motion, and he filed a timely notice of appeal. He complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement, and we now review Appellant's five claims.

> 1) The [c]ourt erred in denying [A]ppellant's Motion for Suppression of Evidence. The arresting officer conducted an "extended search" in violation of the appellant's rights pursuant to the Fourth Amendment of the U.S. Constitution and Article 1, Section 8 of the Pennsylvania Constitution.
>
> 2) The [c]ourt erred in denying [A]ppellant's Motion to Dismiss Count 4 of the information, an alleged violation of 75 Pa. C.S.A. Section 1543(b)(1.1)(iii). Appellant asserts that the mandatory minimum sentence required under this section is violative of law.
>
> 3) On March 17, 2022, the Commonwealth moved to amend Count 2 of the information as a third offense for sentencing purposes, rather than a fourth offense as indicated in the document itself. The Commonwealth later sought and was granted permission to re-amend the charge as a fourth offense. The Commonwealth should have been barred from doing this.
>
> 4) The [c]ourt erred at trial in finding [A]ppellant guilty of Count 3, Driving Under the Influence as a result of the combined influence of alcohol and a controlled substance. The Commonwealth's own witness testified that the amount of [T]ramadol in [A]ppellant's blood stream was barely above the reporting threshold and was hypothetically consistent with treating a toothache the night before a blood sample was obtained. There was no testimony that the [T]ramadol in this case contributed to an inability to drive safely.

- 4 -

5) The [c]ourt erred in sentencing [A]ppellant to a term of imprisonment in excess of the Pennsylvania sentencing guidelines.

Appellant's Brief at 4-5.

Appellant's first argument on appeal contends that the trial court erroneously denied suppression. According to Appellant, Trooper Bivens exceeded the mission of the stop pursuant to *Rodriguez v. United States*, 575 U.S. 348 (2015), which holds that the authority to detain an individual for a traffic stop terminates when the "mission" of the stop ends, absent the development of any additional reasonable suspicion or probable cause to extend the stop due to things learned during the stop.[4] Appellant argues that the trooper was not authorized to open his driver's side door, which he argues "was a pretext of wanting to check the veracity of the VIN he had already recorded," as Trooper Bivens could have simply issued citations. *See* Appellant's Brief at 19 (asserting that "the trooper had sufficient information" to issue a citation for "not having a valid inspection, not having a valid registration and driving under suspension").

We find that Appellant's *Rodriguez* argument is misplaced. *Rodriguez* addresses the reasonableness of a seizure, not the authority to search and, thus, the claim that Trooper Bivens did not have consent to open the door has little connection to *Rodriguez*. The claim that Trooper Bivens unlawfully

---

[4] It is doubtful that Appellant preserved this argument, as his motion to suppress did not distinguish between the two separate times that Appellant's car door was opened. However, we note at the close of the suppression hearing Appellant handed a copy of an unspecified case to the Commonwealth and the trial court, and the Commonwealth addresses the claim on the merits.

- 5 -

extended the stop by opening the door without consent does not actually bear on how long the stop should have taken. To illustrate, even under Appellant's theory that the trooper could have just issued citations instead of opening the car door upon checking the VIN, preparing those citations would have almost certainly taken more time (as in this hypothetical world, Trooper Bivens would have had to prepare the citations).[5] Trooper Bivens did not observe indicia of intoxication, which in turn justified a continuation of the detention to investigate a DUI, due to an unlawful prolongation of the seizure. He learned that information due to opening the door, which requires an analysis of the search.

Additionally, Appellant ignores the trial court's findings of fact. Trooper Bivens testified that he thought he may have incorrectly recorded the VIN, and the order/opinion denying suppression credited this testimony. Order and Opinion, 6/10/22, at 3 ¶ 12. ("Because [Trooper Bivens'] investigation did not return any records after running the truck's VIN[,] … [he] decided to verify that he recorded properly the truck's VIN."). Thus, the record does not support that there was a pretextual reason for opening the vehicle's door. Accordingly, the question is simply whether it was constitutionally unreasonable for Trooper Bivens to confirm whether he mistakenly recorded

---

[5] Moreover, Appellant does not point to any authority that says a law enforcement official is required to take the least intrusive step; if that were the case, presumably the Fourth Amendment would never allow a roadside seizure under any circumstance for minor offenses such as an inoperable taillight since those citations could simply be handled by mail.

the VIN, and **Rodriguez** itself suggests that this was authorized as the stop's

"mission" had yet to terminate. As the High Court explained:

> Beyond determining whether to issue a traffic ticket, an officer's mission during a traffic stop typically includes checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

**Rodriguez**, 575 U.S. at 349.

The records check did not reveal any information about the vehicle, and we conclude that Trooper Bivens was authorized to confirm the VIN due to this anomalous result. At minimum, Trooper Bivens was certainly not precluded from taking further steps; Appellant does not explain why the Fourth Amendment would require a trooper to release the vehicle when a VIN check fails to produce any results. On this point, in response to the trial court's questioning, Trooper Bivens stated that the vehicle "wasn't going to go anywhere" because it was not legal to drive. N.T., 5/17/22, at 28.

In making this determination, we note that we do not address whether the search was constitutionally authorized.[6] The trial court's finding of fact

---

[6] The trial court expressed uncertainty that opening the door was a search. The Commonwealth submits that no search occurred, relying primarily on **Commonwealth v. Grabowski**, 452 A.2d 827 (Pa. Super. 1982), which held that searching the exterior of a vehicle to record its VIN was not a search.

While we need not decide this issue, the Commonwealth's argument warrants a brief response. First, **Grabowski** explicitly addressed examining the **exterior** of the vehicle, whereas here, Trooper Bivens manipulated the
*(Footnote Continued Next Page)*

- 7 -

that Trooper Bivens had consent to view the VIN does not account for the fact that the door had been shut by the time Trooper Bivens returned. Arguably, the scope of Appellant's consent to open the door was limited to the first request and any consent to search ended when the door was closed. By way of analogy, we think it is unlikely that the Fourth Amendment would permit a police officer, who had left a home after being given consent to search, to turn around several minutes later and forcibly open the door to the home on the

_____

door to access the vehicle's **interior**. This is not a minor detail. ***See Arizona v. Hicks***, 480 U.S. 321, 325 (1987) (stating that "the distinction between 'looking' at a suspicious object in plain view and 'moving' it even a few inches is much more than trivial for purposes of the Fourth Amendment") (cleaned up); ***see also Florida v. Jardines***, 569 U.S. 1, 5 (2013) ("When the Government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred.") (quotation marks and citation omitted). Thus, ***Grabowski*** is not on point.

Additionally, in ***New York v. Class***, 475 U.S. 106 (1986), the United States Supreme Court addressed a case involving somewhat comparable facts. There, while one officer spoke to the driver after effectuating a traffic stop, a second officer opened the door of the vehicle and moved some papers that were obscuring the area where the VIN would be printed. In the course of this search, the officer observed a firearm, which the defendant sought to suppress. The Court held that a search had occurred by accessing the interior of the vehicle, but concluded that the search was constitutionally reasonable. "[T]his search was sufficiently unintrusive to be constitutionally permissible in light of the lack of a reasonable expectation of privacy in the VIN and the fact that the officers observed [the] respondent commit two traffic violations." ***Id.*** at 119. We note that, like the ***Grabowski*** Court, the ***Class*** Court relied, in part, on the diminished expectation of privacy inherent in automobiles to support its ruling. Appellant briefly alluded to an Article I, Section 8 claim in his motion to suppress, and this Commonwealth rejects the federal automobile exception. ***Commonwealth v. Alexander***, 243 A.3d 177 (Pa. 2020).

grounds he forgot to check a certain room. The consent to open the door was given, the VIN was recorded, and the search had ended. However, as we have explained, Appellant's argument has little to do with whether the search was constitutionally authorized. We thus simply reject Appellant's argument that the stop was unlawfully prolonged.

In Appellant's second issue, he challenges the constitutionality of the mandatory minimum penalty authorized by 75 Pa.C.S. § 1543(b)(1.1)(iii) on the grounds that the statute fails to specify a maximum penalty. In *Commonwealth v. Eid*, 249 A.3d 1030 (Pa. 2021), our Supreme Court held that a similar penalty provision contained within Section 1543(b)(1) was constitutionally infirm. We disagree that the *Eid* result extends to this case, as Appellant's argument fails to account for the decision in *Commonwealth v. Rollins*, 292 A.3d 873 (Pa. 2023).

In *Eid*, our Supreme Court held that Section 1543(b)(1.1)(i) was unconstitutionally vague because it failed to provide a clear statutory maximum. That provision, in broad terms, creates a separate offense for offenders who commit a DUI while having a license suspended due to a prior DUI. The specific statute analyzed in *Eid* stated that the offense was graded as a summary and carried a mandatory minimum penalty of 90 days but did not specify a maximum penalty. The Commonwealth had argued that the Court should infer a maximum of six months, *i.e.*, twice the minimum. The Court declined to do so, in part because there was no statutory authority for that proposition, and the statute examined did not state an exception to the

general rule of Section 9756(b)(1) of the Sentencing Code, which states that a minimum sentence shall not exceed one-half of the maximum. The Court also declined to authorize a flat sentence of 90 days.

Presently, Appellant was convicted of a provision similar to the one in **Eid**, 75 Pa.C.S. § 1543(b)(1.1)(iii), which states that a "third or subsequent violation of this paragraph shall constitute a misdemeanor of the first degree, and upon conviction thereof the person shall be sentenced to pay a fine of $5,000 and to undergo imprisonment for not less than two years." In **Rollins**, the Court held that **Eid** did not require the same result with respect to Section 1543(b)(1)(iii), which is similar to (b)(1.1), but differs in that the former applies to non-DUI offenses, *i.e.*, a person commits that offense by merely driving while their license is DUI suspended. Section 1543(b)(1)(iii) is likewise a recidivist provision, and states that a "third or subsequent violation of this paragraph shall constitute a misdemeanor of the third degree and, upon conviction of this paragraph, a person shall be sentenced to pay a fine of $2,500 and to undergo imprisonment for not less than six months." Thus, the (b)(1.1)(iii) statute is essentially the same as the (b)(1)(iii) statute analyzed in **Rollins**, with the only material difference being the higher misdemeanor grading. The salient analysis for our purposes is the **Rollins** Court's observation that Section 1543(b)(1)(iii), while also requiring a mandatory minimum with no specific statutory maximum, was not constitutionally infirm because a maximum penalty could be inferred by reference to 18 Pa.C.S. §

106. The *Rollins* case dictates the result here.[7] Section 1543(b)(1)(iii) is graded as a misdemeanor of the third degree whereas the Section 1543(b)(1.1)(iii) offense at issue here is graded as a misdemeanor of the first degree. In both cases, the *Rollins* Court's conclusion that a maximum term of imprisonment may be inferred from Section 106 applies. That statute specifies that a misdemeanor of the first degree carries a maximum penalty of five years. Because a maximum penalty may be inferred, the statute is not unconstitutionally vague.

Appellant's third issue is that the trial court erred by permitting the Commonwealth to amend the information a second time. Briefly, the Commonwealth initially indicated in its criminal information that Appellant had three prior DUI offenses, thereby treating the instant offense as his fourth. The Commonwealth later amended the information to state that Appellant only had two prior DUI offenses. The Commonwealth filed a pre-trial motion to amend the information, stating that while preparing for trial, "the Commonwealth discovered that [Appellant] has three prior DUI offenses, not two, all out of York County, within the last ten (10) years." Motion to Amend, 9/14/22, at unnumbered 1 ¶ 4. The court granted the amendment on September 16, 2022. Appellant filed a motion in opposition, which the court denied.

_____

[7] In *Commonwealth v. Lawrence*, 291 A.3d 912, 915 (Pa. Super. 2023), we held that Section 1543(b)(1)(iii) was not unconstitutionally vague, acknowledging that the Supreme Court had granted the allowance of appeal in *Rollins* from our unpublished memorandum decision in that case.

Appellant has waived his argument on this issue due to defective briefing. Rule 564 of the Rules of Criminal Procedure states that a court may allow amendment, "provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced." Pa.R.Crim.P. 564. Appellant's entire argument is as follows: "Appellant urges that the Commonwealth should be barred or estopped from seeking to the increase the enumeration [sic] of the offense after it had previously moved to decrease it." Appellant's Brief at 25. Appellant offers no argument as to how he was unfairly prejudiced by an accurate counting of his prior convictions. The failure to do so authorizes this Court to deem the issue waived for failing to present an argument. We have previously recognized that,

> [w]hen briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. **Commonwealth v. Gould**, 912 A.2d 869, 873 (Pa. Super. 2006). The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. **Id.**; Pa.R.A.P. 2119(a), (b), (c). Citations to authorities must articulate the principles for which they are cited. Pa.R.A.P. 2119(b).

**Commonwealth v. Kane**, 10 A.3d 327, 331 (Pa. Super. 2010) (quoting **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007)). We exercise this option here because Appellant presents no discussion.

Appellant's fourth claim concerns the sufficiency of the evidence to sustain his conviction for 75 Pa.C.S. § 3802(d)(3), which states:

**(d) Controlled substances.**--An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

*** 

(3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(d)(3).

Our standard of review is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 181 A.3d 1168, 1184–85 (Pa. Super. 2018)

(citation omitted).

The nature of Appellant's sufficiency challenge is not clear. Appellant's argument reads in its entirety:

Count 3 charges driving under the influence as a result of the **combined** influence of alcohol **and** a controlled substance [emphasis added]. The Commonwealth's toxicological witness

- 13 -

> testified that the amount of [T]ramadol in [A]ppellant's bloodstream was barely above the reporting threshold and was hypothetically consistent with treating a toothache the night before the blood sample was obtained. Nowhere in the testimony was it proven beyond a reasonable doubt that the small amount of [T]ramadol somehow combined with [A]ppellant's alcohol to make him incapable of driving safely. Appellant concedes that the alcohol alone was sufficient.

Appellant's Brief at 26 (first bracketed insertion in original).

Appellant references Ms. Bierly's agreement on cross-examination that, given the reporting range of 35 nanograms per milliliter and the plus/minus of 11, Appellant's results would be consistent, on the lower end, with taking a pill for dental pain. However, on direct examination she testified, "Tramadol is a low-potency op[i]oid. … However, in combination with alcohol, you can see additives to the central nervous system depressant or sedative effect." N.T., 12/14/22, at 44. Appellant fails to address this testimony, as the statute references the effect of a combination of drugs and alcohol. In light of the relevant standard of review, the trial court was permitted to draw the inference that Appellant was impaired due to the combination of alcohol and Tramadol. *See Commonwealth v. Graham*, 81 A.3d 137, 147 (Pa. Super. 2013) (concluding that arresting officer's testimony was sufficient to support conviction for driving under the influence of drugs where the defendant refused blood test but admitted to ingesting three different drugs).

Appellant's final claim challenges the discretionary aspects of his sentence, arguing that the trial court should have only sentenced him to a

period of two to four years' incarceration at the Section 1543(b)(1.1)(iii) count. We find that Appellant has waived this claim.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Durazo*, 210 A.3d 316, 319–20 (Pa. Super. 2019) (citation omitted; bracketing in original).

Appellant's issue has been waived for two independent reasons. First, Appellant failed to file a post-sentence motion or otherwise preserve this issue at the trial court level. Additionally, Appellant has failed to comply with Pa.R.A.P. 2119(f). The Commonwealth has objected to this failure. Commonwealth's Brief at 17 ("Appellant in this matter has not complied … with Pa.R.A.P. 2119(f). As such, the Commonwealth first asserts that this argument has been waived.") When the Commonwealth objects to this defect, we may not overlook the failure. *Commonwealth v. Kiesel*, 854 A.2d 530, 533 (Pa. Super. 2004) (stating that this Court may "determine if there is a substantial question" even in the absence of a Rule 2119(f) statement, but "this option is lost if the appellee objects"). We therefore find that Appellant has waived this claim.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/25/2023